**ALF BENNETT LUMBER CO. OF TEXAS v. FALL et al.**

(Court of Civil Appeals of Texas. Galveston. May 1, 1913. Rehearing Denied May 22, 1913.)

1. LOGS AND LOGGING (§ 3*)—SALE OF TIMBER—CONSTRUCTION OF CONTRACT.

In an action to enjoin the cutting of timber, it appeared that a grantor of plaintiffs had, in February, 1907, sold the right to cut and remove the timber for a period of two years, which right was assigned the following month and never exercised by the payment of the price; that such grantor in July, 1908, conveyed the land to the assignee, his deed expressly stating, "all timber on this land excluded from this conveyance," and reserving a vendor's lien, and in August, 1910, executed to the assignee an instrument reciting the former conveyance and the vendor's lien, and containing the terms, "do hereby release said land from the lien retained thereon * * * and do hereby claim and convey * * * all my right, title, and interest in the land conveyed by my deed to him aforesaid." *Held* that, construed in the light of the surrounding circumstances, the instrument was only a release of the vendor's lien on the land, and did not convey the timber, the title to which remained in the grantor.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3;* Contracts, Cent. Dig. § 890.]

2. PLEADING (§ 8*) — MATTERS OF FACT OR CONCLUSIONS—IRREPARABLE DAMAGE.

In an action to enjoin the cutting and removal of timber, the mere allegation that plaintiffs would otherwise suffer irreparable damage was but a legal conclusion.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½, 68; Dec. Dig. § 8.*]

3. INJUNCTION (§ 163*) — DISSOLUTION OF TEMPORARY INJUNCTION — GROUNDS — IRREPARABLE INJURY.

In an action to enjoin the cutting and removal of timber, where defendants' inability to respond in damages was not shown, and where plaintiffs' injury, if established, was easily and readily compensable, and where defendants made equally as good a case of irreparable damages if the injunction was continued, the dissolution of the temporary injunction, leaving the parties to their action at law for damages, was a proper exercise of the court's discretion.

[Ed. Note.—For other cases, see Injunction, Cent. Dig §§ 357–371; Dec. Dig. § 163.*]

4. APPEAL AND ERROR (§ 770*) — BRIEFS — FAILURE TO FILE BRIEF.

Appellant, not being required to file any brief, should not be prejudiced by his failure to do so.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3104, 3106, 3107; Dec. Dig. § 770.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action for injunction by the Alf Bennett Lumber Company of Texas, in which other parties intervened as plaintiffs, against H. B. Fall and another, in which the Beaumont Timber Company intervened as defendant,

with a cross-action by defendants and motion to dissolve a temporary injunction. From an order dissolving the temporary injunction, plaintiff lumber company appeals. Affirmed.

John Lovejoy and Presley K. Ewing, both of Houston, for appellees.

REESE, J. This is an appeal from an order of the district court, dissolving a temporary injunction theretofore granted. The case comes to this court with an assignment of errors and brief by appellees. The transcript contains the pleadings on the case, and is accompanied by certain original and certified copies of deeds introduced on the hearing by the parties, sent up with the record by agreement. The order dissolving the injunction recites that the motion was heard upon the sworn petition and answer and the exhibits annexed thereto, including affidavits. The said exhibits consist of the deeds referred to, which are attached to the answer and motion to dissolve of defendants, the appellees herein. The pleadings consist of the original petition, naming H. B. Fall and E. T. Culp as defendants, and application for temporary injunction, which was granted; the answer of defendants and the Beaumont Timber Company, intervener defendant, and their cross-action, and in connection therewith their motion to dissolve the temporary injunction; the answer of the original petitioner, and certain intervener plaintiffs, to the cross-action of defendants, and their motion to dissolve the temporary injunction; and the supplemental answer of the defendants to the last-mentioned pleadings of plaintiffs. The pleadings are sworn to, except the above-mentioned answer of plaintiffs to the motion to dissolve. The original petition alleges, in substance, that plaintiff the Alf Bennett Lumber Company, a corporation, was the owner of all the standing timber of certain dimensions on the survey of land granted to Jonathan L. Stanley in Montgomery county (referring to the patent and record for identification of the land), except a certain 100 acres thereof, and that said timber is of the value of $7,000; that on December 1, 1912, while plaintiff was in the lawful and peaceable possession of said timber, defendants conspired together to cut and carry away the same, and in pursuance of such conspiracy entered upon the premises, ejected plaintiff, and were engaged in cutting and destroying the timber, and had already cut and removed timber of the value of $300. It was further averred that damages for cutting the timber would be an inadequate remedy for plaintiff's injuries, and unless defendants were restrained therefrom, plaintiff would be remediless. There was prayer for temporary injunction, which, as we have said, was granted and duly issued and was served upon the parties.

The Beaumont Timber Company, Limited, having leave to intervene as a defendant, joined the other two defendants in an answer duly sworn to, wherein it was specifically denied: (1) That plaintiff is, or was at the time of the filing of this suit, the owner of any of the timber on the Stanley survey, or that it was at any time in the peaceable possession thereof, or that the value thereof was as much as $7,000; (2) that defendants have conspired, as charged, to cut and carry away said timber, or that they have in any manner ejected plaintiff from said land; (3) that the damages for cutting said timber would be inadequate relief for the injury sustained by plaintiff, if he is the owner of the timber as alleged; (4) that defendants intend or contemplate doing anything tending to the waste or destruction of said timber further than the mere cutting and taking away the same in the ordinary manner of business.

It is further averred that the timber is of market value readily ascertainable, and that defendants are responsible and solvent, and amply able to respond in whatever amount of damages plaintiff may sustain in the premises. It was averred that defendants were the owners of said land and timber, and their title is set out in full by recitation of the several deeds and other instruments in writing, and the several deeds, etc., or certified copies thereof, are referred to and tendered as exhibits to their answer, from which it appears that Jonathan L. Stanley, the original grantee, died many years ago, leaving surviving him his widow, who afterwards married one McNeese, a son W. T. Stanley, and another child, who was represented, as survivor and heir, by Mary A. L. Snowball. W. T. Stanley conveyed his undivided interest in the survey to James T. Ferguson, and this title by successive conveyances came down to E. V. Ley. Mrs. McNeese, by her last will, duly probated, devised all her interest to her granddaughter, the said Mary A. L. Snowball, and this title, by deeds of conveyance from the sole heirs of Mrs. Snowball, became vested in the said E. V. Ley. The title thus vested in E. V. Ley became vested in defendant H. B. Fall, except a specific 100 acres, now held and occupied by one L. L. McFee, which does not appear to be involved in this litigation. Upon information and belief it is charged as a fact that defendants claim that Mrs. McNeese, the widow of Jonathan Stanley, held in her own right the whole, or one-half, of said survey, and that plaintiff's vendor of said timber regularly deraigns title to said lands under deed from her, executed and delivered prior to the will and deeds thereunder under which defendants claim. It is alleged that said deed from Mrs. McNeese was never filed for record in Montgomery county, where the land lies (and this is shown by the attached certified copy of the deed to be a fact), and that the defendants and their aforesaid vendors were innocent purchasers for value, and without notice of such prior deed of McNeese, if such ever existed, and the same is void as to them. It was further averred

that if Mrs. McNeese had any right, title, or interest in said land, it was an equitable interest or right only, and that such claim had lain dormant for half a century before the commencement of this suit, and is barred by laches as a stale demand.

It was further averred that plaintiff's title is deraigned as follows: One J. L. Garwood held such title as was conveyed by the aforesaid deed from Mrs. McNeese and he, on March 8, 1895, by deed of that date, conveyed to R. H. John out of said survey 443 acres, undivided and unsurveyed, less 100 acres thereof, being the aforesaid McFee tract. (This deed we cannot find among those sent up, so we cannot determine whether its contents are correctly stated in the answer.) Proceeding with the allegations of the answer with regard to plaintiff's claim of title, R. H. John, on February 9, 1907, sold and conveyed to J. H. Brightwell the right to cut and remove, for a period of two years and not longer, the timber on said undivided 343 acres out of the Stanley survey. In March, 1907, Brightwell conveyed this timber right to J. O. Ross, who on May 29, 1907, conveyed it to Houston & Liggett. On July 21, 1908, John sold and conveyed to said Liggett the said 343 acres of land, excluding, by express provision of the deed, all the timber on the land. On October 28, 1910, John released to Liggett the vendor's lien on the land. On October 26, 1910, Houston & Liggett conveyed the said land to the Bush Bros. Lumber & Milling Company. The plaintiff the Alf Bennett Lumber Company claims to have acquired the timber on said land from the said Bush Bros. Lumber & Milling Company. Afterwards R. H. John, on February 13, 1913, for valuable consideration, sold and conveyed the timber on said land (which had not been cut by Brightwell or his vendees of the timber) to R. W. Franklin, who in turn sold and conveyed to the Beaumont Timber Company.

It was averred that defendants, relying upon their deeds to said land under the heirs and devisees of Jonathan Stanley and his widow, Mrs. McNeese, had for their further peace and protection purchased the timber aforesaid from R. H. John. It was averred that the said Fall is the owner in fee simple of said Stanley survey (except the McFee tract) and that the Beaumont Timber Company is the owner of the timber so far as cut and removed within six months from January 30, 1913.

The answer further alleges that the Alf Bennett Lumber Company, the Bush Bros. Lumber & Milling Company, the firm of Houston & Liggett, and George C. Rice Lumber Company, the latter under some contract for a timber interest with the Alf Bennett Company, are claiming the right, title, and interest in and to said land, and the timber thereon, and seriously threatening to prevent defendants from cutting or taking away timber; that there is urgent necessity, particularly to the Beaumont Timber Company, to cut said timber without delay, as otherwise they will suffer irreparable damage, not readily ascertainable, and not compensable at law, particularly on account of idle mill, and their inability to determine what timber would have been cut in the absence of such delay. It was alleged that the defendants had already been damaged to the extent of $550 per day by the operation of the temporary injunction for which they sue, and that plaintiff owns nothing except some timber option contracts, and is without property subject to execution sufficient to compensate defendants for the damages suffered by them by such injunction, particularly if the same be continued in force. This answer was duly sworn to by defendant H. B. Fall, and accompanying the same was a motion to dissolve the injunction.

To this answer, cross-bill, and motion plaintiff answered, alleging that it is the owner of all of the Jonathan Stanley survey, and denying that defendants, or either of them, had title, and charging that they, and each of them, had both actual and constructive notice of the title of plaintiff to the land and timber. It was further set out that plaintiff had a deed to the said survey from Bush Bros. Lumber & Milling Company. The allegations of damage set out in the answer of defendants were specially denied, also the allegations as to the inability of plaintiff to respond in damages. This answer was not sworn to.

George C. Rice, intervener, answered, adopting all the pleadings of plaintiff, and specially represented that in September, 1912, the plaintiff the Alf Bennett Lumber Company entered into a contract, whereby said lumber company granted to him the right to cut all pine timber 8″ and larger on the holdings of said company on certain land, among others the Stanley survey, also the use of its sawmill for a monthly rental of $200, and that by said contract George Rice bound himself to cut and manufacture all the merchantable pine timber of certain dimensions on said lands, to pay the said lumber company $4 per thousand feet of said timber cut, to pay it on or before the 10th of each month for all logs cut during the previous month, but no payment to be less than $2,600 per month, to commence October, 1912, and in default thereof to turn over to said lumber company all of its rights under said contract, including the lease of the mill. The said Rice was also to repair the mill to the extent of $4,000, if necessary, and to keep it insured. It was averred that his rights under this contract had been assigned to the Rice Lumber Company, but he is personally liable for its performance. Should this injunction be dissolved and defendants permitted to cut the timber intervener will be unable to cut the said timber, and will become

liable for large sums of money on account of said contract, and will suffer great and irreparable damage, which could not be compensated or measured at law. Intervener further averred that H. B. Fall owned the Beaumont Timber Company; that the time limit of six months within which it was to cut the timber under the contract with Fall was a subterfuge, and if Fall owns the timber he can give said company all the time it needs; that the said timber company is a Louisiana corporation, and has no property in the state of Texas whereby it can be made liable in damages to them; that defendants had full knowledge when they obtained the timber deed from R. H. John that John did not own, or claim to own, the same, but procured such deed to bolster up a design entered into by said Fall to deprive the true owners of their property after he had entered negotiations with them and procured their abstracts of title, with the pretended purpose of buying said property from them. It was alleged that the true meaning and intendment of the deed from R. H. John to Liggett herein filed in connection with the deed to Brightwell was to convey both land and timber to said parties. It was finally averred that the defendants are not solvent or responsible, and that the dissolution of the injunction will result in irreparable loss to them, and there is prayer that the motion to dissolve be denied. This answer is verified by the affidavit of George C. Rice.

W. G. Liggett and Houston & Liggett answered by general demurrer and general denial.

Defendants, by supplemental answer, alleged that in the Stanley survey there are about 304 acres lying south of the McFee tract, and about 498 acres north of it, and the timber on each tract is about 3,000,000 feet in quantity, and of practically the same value; that when John sold the timber to Franklin, which he had expressly excluded in his deed to Liggett, he (John) well understood and stated that persons claiming under said deed, and under the limited transfers of timber which he had previously made, were claiming that they had acquired the timber on said land, and he was claiming that they had not, and that in these circumstances he was willing to take, and did take, the price of $200 for said timber, which allegation is supported by the affidavit of said Franklin attached to the answer. Defendants further set up a deed from one Mabel F. Smith to the Beaumont Timber Company for all of the sawlogs pine timber growing on said land, with an allowance of six months to cut it. There were other allegations not material to the disposition of this appeal. This supplemental answer was sworn to.

So far as we can understand the allegations of the pleadings, and such of the deeds as are before us, the dispute as to the title to the land and timber rests mainly upon whether the grantors of appellees at the time they obtained the deeds from the heirs and devisees of Jonathan L. Stanley and his widow, Mary A. L. McNeese, had notice of the prior sale by Mrs. McNeese of the land under which appellants claim, and upon the construction of the release from John to Liggett. This notice is denied by appellees by sworn pleadings, and asserted by appellant the Alf Bennett Lumber Company, by its answer to defendants' cross-action and motion to dissolve, which is not verified by affidavit. According to the allegations of the sworn answer, appellees show a clear title to the land, under both Stanley and his widow, Mrs. McNeese, and the deeds introduced show such title, unless defeated by the prior deed from Mrs. McNeese, which was not recorded in the county where the land lies, and as to which it is alleged, under oath, appellees were innocent purchasers for value and without notice.

[1] Another question arises on the construction of the deeds from R. H. John. Appellant's title comes through John, to whom Garwood, who held the title under Mrs. McNeese, conveyed. John sold to Brightwell February 9, 1907, "the right to cut and remove for a period of two years and not longer" all the standing timber on the land, with permission to cut for a further period of one year on payment of 10 cents per acre. Even with the added year this right expired February 9, 1910. It is alleged that this further privilege was never availed of by payment of the price. This right to cut timber was transferred by Brightwell to J. O. Ross March 25, 1907, and by Ross to Houston & Liggett May 29, 1907. On July 21, 1908, John conveyed to W. G. Liggett the land, expressly stating in the deed, "all timber on this land excluded from this conveyance." This conveyance reserves an express vendor's lien to secure notes given for the purchase money due in one and two years. On August 10, 1910, John executed to Liggett an instrument which recites the former conveyance, the notes and vendor's lien, and the payment of the notes, and that Liggett "is desirous of obtaining a release of said lien retained on the land in the deed." This instrument then proceeds as follows: "Now, therefore, know all men by these presents that I, R. H. John, * * * for and in consideration of the premises and of $1.00 to me in hand paid by W. G. Liggett, the receipt of which is hereby acknowledged, do hereby release said land from the lien retained thereon in the deed aforesaid and do hereby quitclaim and convey unto the said W. G. Liggett all my right, title and interest in the land conveyed by my deed to him aforesaid." From Liggett the title to the land passed to appellants. Inasmuch as at the time of the execution of this last instrument all the time given in the conveyance of the timber by John within which to cut same had ex-

pired, and the title to the timber was absolute in John, appellants contend that the effect of this instrument was to convey to W. G. Liggett the timber as part of the land. This is the construction claimed of the words "quitclaim and convey * * * all right, title and interest," etc. We do not think this contention can be sustained. By his conveyance of the right to cut the timber to Brightwell and the subsequent conveyance to Liggett of the land, expressly excluding the timber, although Liggett (or Houston & Liggett) at that time also owned the right to cut the timber under the transfer to Brightwell, John had separated the timber from the land. This timber is shown to be valuable. Upon payment of the notes given for the land without the timber, and without additional consideration, John executed this instrument. We think it clear from the terms of the instrument when construed in the light of the attendant circumstances that this instrument was only a release of the vendor's lien on the land. It contains no word not usual in, and appropriate to, such a release. It did not serve to convey to Liggett the timber, the title to which remained in John. There is nothing to indicate that this right in the timber did not pass to appellees under John's subsequent conveyance thereof. As we understand the pleadings and the exhibits, this deed from Liggett is appellant's sole source of title to the land and timber, which is destroyed, so far as concerns the timber, by the only construction of it permissible. If this deed did not convey the timber, the title thereto still remained in John, and passed to Franklin and thence to appellees. Under the showing thus made by the pleadings, we think the court did not err in sustaining the motion to dissolve the injunction. There is no denial of the allegations of the answer in regard to the chain of deeds under which Fall claims title to the land.

[2, 3] Upon other grounds we are of the opinion that such dissolution was not an improper exercise of discretion. It does not appear to us that the injunction is necessary to protect appellants from irreparable damages if on the trial they should be able to sustain their title to the land and timber. The mere allegation that they would suffer such irreparable damage is but a legal conclusion. The facts stated do not, to our minds, sustain such conclusion. The affidavit of the insolvency of appellees, set up under oath only in the answer of Rice, is specifically denied under oath by appellees. It cannot be said that the court was not authorized, in such circumstances, to consider that the fact of such insolvency was not sufficiently made out, the burden being upon appellants. If appellees are able to respond in damages, we can see nothing in the nature of the damages to be sustained by appellants by dissolving the injunction, if they should sustain

their right to the timber, that would make them irreparable or not easily and readily compensable. Appellees make equally as good a case of irreparable damages if the injunction is continued. In such case, we think, the court did not improperly exercise its discretion to leave the parties to their action at law, for such damages that might accrue to either of them.

We, of course, must not be considered, by anything we have said, to have passed finally upon the title, or right of the parties. We only go so far as is necessary to show that on the showing made, the court did not err in staying the hand of equity, and leaving the plaintiff to the result of such trial.

[4] Several questions are presented by the brief filed by appellees, which we do not find it necessary to discuss or dispose of, especially in the absence of any brief for appellants. Not being required to file such brief, they should not be prejudiced by their failure to do so.

Finding no error, the judgment is affirmed.

Affirmed.